Filed 2/13/24  In re Mariah H. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re MARIAH H. et al., Persons Coming Under the Juvenile Court Law. | B329102 (Los Angeles County Super. Ct. No. 17LJJP00075B, D, and E) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. MARY-MONICA V., Defendant and Appellant. | |

| In re TINA H., a Person Coming Under the Juvenile Court Law. | B331185 (Los Angeles County Super. Ct. No. 17LJJP00075C) |
| --- | --- |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARY-MONICA V.,<br><br>    Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stephanie M. Davis, Judge. Conditionally affirmed and remanded with directions.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Mary-Monica V. (Mother) appeals from the juvenile court's orders terminating her parental rights under Welfare and

Institutions Code section 366.26[1] to the four children she has with Cleve H. (Father): 14-year-old Mariah H., 13-year-old Tina H., 12-year-old Prince H., and eight-year-old Maliyah H.[2] Mother's sole contention on appeal is that the Los Angeles County Department of Children and Family Services (the Department) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) and related California law. Mother argues the Department failed to interview all maternal and paternal extended family members, including eight paternal uncles and four maternal aunts and uncles, as to the children's possible Indian ancestry, and the court prejudicially erred in finding ICWA did not apply without a further inquiry.

We agree the failure of the juvenile court and the Department to comply with the inquiry requirements of ICWA and related California law constitutes prejudicial error. We conditionally affirm and remand for the court and the Department to comply with the inquiry and notice provisions of ICWA and California law.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

[2] Mother separately appealed from the February 28, 2023 order terminating her parental rights to Mariah, Prince, and Maliyah (Case No. B329102) and the May 22, 2023 order terminating her parental rights to Tina (Case No. B331185). We consider the appeals together in this opinion. Mother's fifth child, Keijon, is not at issue in this appeal. For ease of reference we will refer to Mother's four children at issue in this appeal as Mother's "children."

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Dependency Petition and Detention Hearing*

On September 28, 2017 the Department filed a dependency petition on behalf of Mother's five children pursuant to section 300, former subdivision (b)(1), alleging in count b-1 that Mother left the children with numerous unrelated adults or alone in the home without making arrangements for the children's care and supervision.  Further, Mother's whereabouts were unknown for weeks at a time.  The petition alleged in count b-2 that Mother had a history of illegal substance abuse and currently used marijuana.  Mother's conduct endangered the children's physical health and safety and placed them at risk of serious physical harm.  The children were detained from Mother and released to Father.

On April 23, 2018 Mother executed a waiver of rights form and entered a plea of no contest to amended count b-2 that Mother had a history of illegal substance use and was a current abuser of methamphetamine and marijuana.  The juvenile court struck count b-1.  The children were declared dependents of the court and were removed from Mother under section 361, subdivision (c), and placed with Father.  The court ordered reunification services for Mother and ordered her to complete a full drug and alcohol program with aftercare, to participate in individual and mental health counseling, and to submit to weekly drug testing.  The court granted Mother monitored visitation.

Over the next six months, Mother did not make adequate progress on her case plan (leaving a drug treatment program after one month), and for most of the period Mother's whereabouts were unknown.  The children continued to live with Father.  In January 2019 Father tested positive for

4

methamphetamine, amphetamine, and cannabinoids. On February 15 Mariah, Tina, Prince, and Maliyah were removed from Father.

On February 22, 2019 the Department filed a subsequent petition under section 342 alleging under section 300, former subdivision (b)(1), that Father had a history of substance abuse and was a current abuser of methamphetamine, amphetamine, and marijuana, which rendered him incapable of caring for the children, and Father's conduct placed the children at risk of serious physical harm. On May 22 the juvenile court sustained the subsequent petition and removed the children from Father.

On March 4, 2020 the juvenile court terminated reunification services for Father, and on December 23, 2020 the court terminated reunification services for Mother. The matter was set for a selection and implementation hearing (§ 366.26) on April 22, 2021 with respect to the four children, which hearing was continued multiple times (including for ICWA compliance).

At the continued selection and implementation hearing held on February 28, 2023 with respect to Mariah, Prince, and Maliyah, the juvenile court found by clear and convincing evidence the three children were adoptable and it would be detrimental to return the children to the parents' custody. The court also found there were no exceptions to termination of parental rights. The court terminated Mother's and Father's parental rights and found adoption was the appropriate permanent plan.

The selection and implementation hearing with respect to Tina was continued at the Department's request because Tina and her prospective adoptive parents had moved to a new home that needed to be approved. The juvenile court held the selection

5

and implementation hearing on May 22, 2023. At the hearing, the juvenile court found by clear and convincing evidence Tina was adoptable and it would be detrimental to return her to the parents' custody. The court also found there were no exceptions to termination of parental rights. The court terminated Mother's and Father's parental rights to Tina and found adoption was the appropriate permanent plan.

B.    *The Department's ICWA Inquiry*

On September 29, 2017 Father filed a parental notification of Indian status form (Judicial Council form ICWA-020) stating he had no Indian ancestry "as far as I know." At the detention hearing held that date, the juvenile court stated the court did not have any reason to know the children were Indian children. On January 4, 2018 Mother filed a parental notification of Indian status form similarly stating she had no Indian ancestry as far as she knew. At the initial jurisdiction hearing held on that date, the Department's attorney noted the juvenile court had determined at the detention hearing that it had no reason to know ICWA applied. The court responded, "So ICWA findings have already been made."

It does not appear any extended family members were interviewed until 2022. The Department's August 8, 2022 last minute information for the court stated with respect to ICWA that contact information for the grandparents for further ICWA inquiry "appears to be either missing or out of date," and the Department requested additional time to complete its ICWA inquiry. At a hearing on August 22 set for the selection and implementation hearing, the juvenile court ordered "once again" that the Department prepare an ICWA report for the court.

6

On September 27, 2022 the social worker interviewed Father, paternal grandmother Phyllis P., paternal aunt Lisa H., and paternal aunt Keisha H. The three reported they "do not know of" any Indian ancestry. Further, the paternal grandfather died in 2015, and there were no other living family members to interview.

Mother consistently told the social worker that she did not have any Indian ancestry. The social worker attempted to reach the maternal grandmother, Sylvia V., and left messages for her on September 19, 27, and 28, 2022. On September 27, the social worker spoke with Mother, who confirmed the contact information for Sylvia. The Mother added that she would ask Sylvia to call the social worker, and Mother suggested the social worker call in the early morning because Sylvia was a teacher who had "an early morning routine." On September 28 the social worker called Sylvia "in the morning," but she did not answer. Mother stated the maternal grandfather was deceased and there were no other living family members for the Department to contact.

At the October 19, 2022 continued selection and implementation hearing, the juvenile court found the Department had complied with its inquiry obligations under ICWA as to Father. The Department's attorney stated the ICWA inquiry was pending because the Department was still trying to reach Sylvia. The court asked Mother to assist the Department in contacting Sylvia. Mother stated she had talked to Sylvia a week earlier, and Sylvia said, "We don't really have any ancestry, Indian ancestry." The court inquired about other living relatives, to which Mother responded there were none. Based on this colloquy, the court found a sufficient ICWA inquiry had been

made as to Mother.  The court requested that Mother tell the social worker if Mother learned of anyone else having information about the children's Indian ancestry and to provide the contact information to the social worker.

At the February 28, 2023 selection and implementation hearing for Mariah, Prince, and Maliyah, the juvenile court found again that the Department had complied with its inquiry obligations and, based on the inquiry, ICWA "does not apply as to the Mother, the Father, or minors."  The court made the same ICWA findings at the May 22, 2023 selection and implementation hearing at which the court terminated Mother's and Father's parental rights to Tina.

Mother timely appealed from the orders terminating her parental rights as to the four children.

## DISCUSSION

A.  *ICWA Inquiry and Notice Requirements*

ICWA and California law require in dependency proceedings that where the court knows or has reason to know an Indian child is involved, notice must be given to the relevant tribes.  (25 U.S.C. § 1912(a); § 224.3, subd. (a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 5; *In re Rylei S.* (2022) 81 Cal.App.5th 309, 317 (*Rylei S.*); Cal. Rules of Court, rule 5.481(c)(1).)  The notice requirement is at the heart of ICWA because it "enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding."  (*In re Isaiah W.*, at p. 5; accord, *In re Antonio R.* (2022) 76 Cal.App.5th 421, 428 (*Antonio R.*).)

The juvenile court and the Department "have an affirmative and continuing duty to inquire whether a child for

8

whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W., supra*, 1 Cal.5th at p. 9; *In re J.C.* (2022) 77 Cal.App.5th 70, 77 (*J.C.*).) The duty to inquire begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child. (*Rylei S., supra*, 81 Cal.App.5th at p. 316; *J.C.*, at p. 77; *In re H.V.* (2022) 75 Cal.App.5th 433, 437.)

Section 224.2, subdivision (b), imposes on the Department a duty to inquire whether a child in the Department's temporary custody is an Indian child, which "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." (See Cal. Rules of Court, rule 5.481(a)(1) [the Department "must ask . . . extended family members . . . whether the child is or may be an Indian child"].) "The duty to develop information concerning whether a child is an Indian child rests with the court and the Department, not the parents or members of the parents' families." (*Antonio R., supra*, 76 Cal.App.5th at p. 430; see *In re K.R.* (2018) 20 Cal.App.5th 701, 706 ["The juvenile court's duty to inquire . . . is independent of any obligation on the part of the parents of the dependent child."].)

"Where the Department fails to discharge its initial duty of inquiry under ICWA and related California law, and the juvenile court finds ICWA does not apply notwithstanding the lack of an adequate inquiry, the error is in most circumstances . . . prejudicial and reversible." (*Antonio R., supra*, 76 Cal.App.5th at

9

p. 435; accord, *In re D.B.* (2022) 87 Cal.App.5th 239, 245 ["The Department's failure to comply with ICWA is prejudicial if 'the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child.'"]; *J.C., supra*, 77 Cal.App.5th at pp. 80-81.)

B.      *The Juvenile Court Failed To Ensure the Department Complied with ICWA and Related California Law*

Mother contends the Department and the juvenile court did not satisfy their obligations under ICWA and related California law because the Department failed to interview the eight paternal uncles, the maternal grandmother (Sylvia), and the maternal aunts and uncles. We agree the inquiry under ICWA was inadequate and prejudicial.

As discussed, the social worker interviewed the paternal grandmother and two paternal aunts about the children's ancestry. Mother argues there were eight paternal uncles, and the Department made no effort to interview them. The record supports Mother's contention. Further, the social worker in February 2019 interviewed paternal uncle Mark H. about Father's possible drug use, but the social worker did not inquire about his Indian ancestry.

As to the maternal relatives, Mother argues the Department did not make a sufficient effort to interview Sylvia by, for example, sending her a letter, visiting her residence, or leaving a note at her residence. Mother points to her own statement from the October 19, 2022 hearing that Sylvia said the family did not "really" have any Indian ancestry, suggesting the use of the word "really" meant there may be some Indian

10

ancestry.[3]  Mother also asserts the Department made no effort to locate and interview her four siblings.  Although Mother reported she had "minimal communication" with her siblings, the record does not show, and the Department does not argue, that any effort was made to locate and interview the siblings (or confirm whether they were deceased, as suggested by Mother three years later).

The Department argues in its respondent's brief that there is no reason to believe the eight paternal uncles would have any information the paternal grandmother and two paternal aunts did not.  And as to Mother's relatives, the Department argues simply that a sufficient inquiry was made of Sylvia who, by not returning the Department's calls, demonstrated she "had no interest in speaking to the social worker."

Contrary to the Department's position, section 224.2, subdivision (b), obligated the Department to inquire of all "extended family members" as to the children's possible Indian ancestry.  (See *J.C., supra*, 77 Cal.App.5th at p. 77; *Antonio R., supra*, 76 Cal.App.5th at p. 431.)  Under ICWA, the term "extended family member" is "defined by the law or custom of the

---

[3]  Mother also argues that when the juvenile court inquired of her at the October 19, 2022 hearing, the court should have asked whether she was aware of any family members who could be interviewed instead of the court's more narrow question of whether there were other maternal relatives who could have information about the children's Indian ancestry.  Although the court's phrasing was not ideal, the social worker in the September 27, 2022 interview more generally requested Mother provide contact information for other family members to contact.

Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin or stepparent." (25 U.S.C. § 1903(2); see Welf. & Inst. Code, § 224.1, subd. (c) ["As used in connection with an Indian child custody proceeding, the terms 'extended family member' and 'parent' shall be defined as provided in Section 1903 of the federal Indian Child Welfare Act."].) Thus, the Department had a duty to inquire of the paternal uncles, maternal grandmother, and maternal aunts and uncles as to the children's possible Indian ancestry. The Department misconstrues its obligation under ICWA and California law, arguing as to the paternal uncles that "there is no reason to believe that they would have information that their mother and sisters did not." And the Department fails to address at all why the maternal siblings were not interviewed. The duty to inquire of extended family members under section 224.2, subdivision (b), is not limited to those the Department decides are likely to have information other family members do not.

The Department appears to conflate its statutory inquiry obligations with our harmless error analysis on appeal.[4] As we explained in *Antonio R., supra,* 76 Cal.App.5th at page 435, "[I]n determining whether the failure to make an adequate initial inquiry is prejudicial, we ask whether the information in the hands of the extended family members is likely to be meaningful in determining whether the child is an Indian child, not whether

[4]     The Department does not argue harmless error, asserting only that there was no error.

12

the information is likely to show the child is in fact an Indian child.  In most circumstances, the information in the possession of extended relatives is likely to be meaningful in determining whether the child is an Indian child—regardless of whether the information ultimately shows the child is or is not an Indian child."  (Accord, *In re D.B., supra*, 87 Cal.App.5th at p. 245 [failure to inquire of paternal grandmother and great-grandmother was prejudicial error because their responses to an ICWA inquiry would shed meaningful light on whether there was reason to believe D.B. is an Indian child]; *In re Ricky R.* (2022) 82 Cal.App.5th 671, 680 [failure to inquire of maternal grandmother, maternal aunt, and paternal grandmother was prejudicial error where extended family members were "readily available, and their responses would 'shed meaningful light on whether there is reason to believe'" the children were Indian children].)

It may well be that further inquiry of the eight paternal uncles would not have resulted in any additional information regarding the children's possible Indian ancestry given the statements from Father, the paternal grandmother, and two paternal aunts that the children did not have any Indian ancestry.  But this is not the case with respect to the maternal relatives.  The social worker never attempted to identify or interview the maternal aunts and uncles.  Even if Sylvia's statement through Mother that Sylvia was not aware of any Indian ancestry may have satisfied the Department's duty to inquire of Sylvia, the Department should have made a greater effort to obtain information from Sylvia (for example, going to her home or place of work) regarding potential Indian ancestry.  And the Department should have obtained contact information for the

13

four maternal aunts and uncles or other family members who may have information regarding the children's possible Indian ancestry.

The juvenile court therefore erred in finding ICWA did not apply to the proceedings and in failing to ensure the Department complied with its duty of inquiry. (*J.C., supra*, 77 Cal.App.5th at p. 74; *Antonio R., supra*, 76 Cal.App.5th at p. 432.)

## DISPOSITION

The February 28 and May 22, 2023 orders terminating Mother's and Father's parental rights are conditionally affirmed. We remand for the Department and the juvenile court to comply with the inquiry and notice provisions of ICWA and California law consistent with this opinion, including further inquiry of Sylvia and an attempt to locate and interview the maternal and paternal aunts and uncles. If the court finds Mariah, Prince, Maliyah, and Tina are Indian children, it shall conduct a new section 366.26 hearing, as well as all further proceedings, in compliance with ICWA and related California law. If not, the court's original section 366.26 orders will remain in effect.


FEUER, J.

We concur:


SEGAL, Acting P. J.        MARTINEZ, J.

14